**UNITED STATE BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI**

In re:                                                                    Case No.  12-23166-AJC

      Paul Richard Caputo

                                             Chapter 13

      Debtor,
_____/

## <u>CAMILE CAPUTO'S RESPONSE TO DEBTOR'S OBJECTION TO PRIORITY CLAIM (DE 85) AND  MEMORANDUM OF LAW IN SUPPORT</u>

      Camile Caputo, through undersigned counsel, files this Response to DE 85, Debtor's Objection to Camile Caputo's Priority Claim (Proof of Claim No. 2) and Memorandum of Law in support:

### <u>SUMMARY</u>

      Camile Caputo was married to Debtor Paul Richard Caputo. They divorced in June of 2007 and entered into a marital settlement agreement that obligated Debtor to make $1,000 per month child support payments to Camile Caputo.  The Agreement also required Debtor to pay $210,000 marital settlement. In exchange for that payment, Camile Caputo gave up her interest in the martial home and co-signed a new equity line on the home.  Debtor received the proceeds of the loan but never paid the loan or the $210,000 owed to his ex-wife.  Lastly, Camile Caputo had no income and was not working, while Debtor was gainfully employed and was investing in real estate.  Under these facts and circumstances, the nature of the amount owed to Camile was in the nature of alimony, maintenance and support.

      In his response to the Proof of Claim No. 2 (DE 85), Debtor claims that Camile Caputo is paid in full. He has included his ex-wife Camile as an unsecured creditor in the Chapter 13 plan and has objected to Camile's priority claim.  Camile Caputo objects to this classification based

DIEPPA LAW FIRM, P.A., ATTORNEYS AT LAW
2097 WEST 76TH STREET, HIALEAH, FLORIDA 33016 · TELEPHONE (305) 826-8266

on the facts that show the $200,000 owed to her is a domestic support obligation under U.S. bankruptcy law.

## STATEMENT OF FACTS

1)      Debtor Paul Richard Caputo and Camile Caputo terminated their marriage through a Final Order of Divorce dated November 14, 2007.

2)      The parties entered into a Marital Settlement Agreement dated June 13, 2007. See Exhibit "A".  Pursuant to the Marital Settlement Agreement, Debtor was ordered to pay child support of $1,000.00 per month.

3)      The Marital Settlement Agreement also provided for a property settlement in the amount of $200,000 and a payment in the amount of $10,000.  Debtor retained the marital home.

4)      At time of divorce, Camile Caputo was not working and had no income.  Caputo was not represented by counsel due to her lack of income.

5)      Debtor was buying a lot of real estate at that time and had income.

6)      Debtor Paul Caputo agreed with Camile Caputo that her alimony would be called "equitable distribution" because the $200,000 of alimony owed to her was the equity from the house.  See Exhibit "B", separately signed agreement that the property settlement is in nature of alimony.

7)      Debtor did not put the marital home for sale.  Further, the $200,000 was contingent on Camile Caputo co-signing an equity loan for $120,000 for which Debtor received all funds (an additional $50,000 was also borrowed by Debtor on that line).  See Exhibit "C", Promissory Note signed Paul Caputo and Camile Caputo dated April 10, 2007.

8)      Camile Caputo would not have co-signed the Promissory Note but for Debtor's written promise and guarantee to pay her $200,000 from the sale of the home.

DIEPPA LAW FIRM, P.A., ATTORNEYS AT LAW
2097 WEST 76TH STREET, HIALEAH, FLORIDA 33016 · TELEPHONE (305) 826-8266

9)      After Camile Caputo signed the equity line and moved out, Debtor ceased paying Camile Caputo. Furthermore, Debtor did not make one single payment on that equity loan and that creditor is still seeking payment from Camile Caputo as a result of the non-payment.

10)      As of February 24, 2013, Debtor still owes the $200,000.00 property settlement to Camile Caputo, as reflected in Proof of Claim No. 2.

11)      Debtor filed for Ch. 13 bankruptcy on May 30, 2012.

12)      Based on the facts and intentions of the parties in executing the Promissory Note and the Marital Settlement Agreement, Camile Caputo is a priority creditor under federal bankruptcy law and should be receiving monthly payments that amortize the $200,000 owed through the chapter 13 plan since it is a domestic support obligation in the nature of support or alimony.

13)      Debtor has made no provision for paying the $210,000 marital equitable distribution in full in his Ch. 13 plan.  See DE12.

## MEMORANDUM OF LAW

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") directly addressed issues related to the dischargeability of marital debt and support obligations, as well as to the effect of the automatic stay on collection and enforcement proceedings out of divorce and family law litigation.   Under BAPCPA, domestic support obligations (usually alimony, child support and property distribution) are given priority over almost every other creditor.   Domestic support obligations includes pre- and post-petition debts. 11 U.S.C. § 101(14A) (2006).

BAPCPA added a new definition of a "domestic support obligation." 11 U.S.C. §101(14A).  A "domestic support obligation" is a "debt" that "accrues before, on, or after the

date of the order for [bankruptcy] relief" and includes any "interest that accrues on that debt as provided under applicable nonbankruptcy law." Id. However, the specific "debt" must be "owed to or recoverable by a spouse, former spouse [or designated other persons]." 11 U.S.C. §101(14A)(A). To be a "domestic support obligation" BAPCPA requires that the debt be "in the nature of alimony, maintenance, or support . . . of such spouse [or] former spouse . . . without regard to whether such debt is expressly so designated." 11 U.S.C. §101(14A)(B). The "domestic support obligation," or "**DSO**," may be established "before, on, or after" the bankruptcy filing "by reason of applicable provisions of a . . . divorce decree . . . [in] an order of a court of record." 11 U.S.C. §101(14A)(C).

A debtor's obligation to pay marital debts directly to a third party (i.e., pay the mortgage on a former marital residence) and to hold the former spouse harmless on said debts is also deemed to be non-dischargeable if the obligation has the effect of providing support to the former spouse. A debtor's duty to pay the following expenses are usually deemed to be in the nature of support and not dischargeable: educational expenses of a minor child; medical insurance coverage for a minor child; and life insurance, with the minor children as beneficiaries.

BAPCPA substantially changed the nondischargeable debt standards under § 523(a)(15). Pre-BAPCPA, property settlements were generally presumed nondischargeable subject to two very broad exceptions -- the so-called "inability to pay" exception, see, e.g., *Clair, Griefer LLP v. Prensky* (*In re Prensky*), 416 B.R. 406, 409 (Bankr. D.N.J. 2009), and the so-called "balancing test," see, e.g., *Damschroeder v. Williams* (*In re Williams*), 398 B.R. 464, 468 (Bankr. N.D. Ohio 2008). BAPCPA has eliminated the exceptions contained in the prior version of 11 U.S.C. §523(a)(15). The simplified statutory provision now requires claimant to present limited specified elements of proof to establish nondischargeability of the DSO: (1) a debt is owed "to a

DIEPPA LAW FIRM, P.A., ATTORNEYS AT LAW
2097 WEST 76TH STREET, HIALEAH, FLORIDA 33016 · TELEPHONE (305) 826-8266

spouse, former spouse, or child of the debtor;" (2) the debt is not a DSO as described in 11 U.S.C. §523(a)(5) (which incorporates the definition in § 101(14A)); and (3) the debt "is incurred by the debtor in the course of a divorce or . . . divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit." 11 U.S.C. §523(a)(15) (post-BAPCPA).

In Chapter 13 bankruptcy, past due domestic support obligations owed by a debtor are not dischargeable, unless they are paid in full over the life of the Chapter 13 plan. However, if a debt created by a separation agreement or judgment of divorce is not in the nature of support, it sometimes can be discharged in Chapter 13 without being paid in full.  For a Chapter 13 Plan to be confirmed by the Bankruptcy Court, it must: pay in full to the former spouse all domestic support obligations owed by debtor at the time of the bankruptcy filing, and the debtor must be current on all domestic support obligations incurred after the bankruptcy filing.  Past due support obligations are generally required to be paid in full through the debtor's plan but an exception can be made if the creditor agrees.  Support debts have a first priority, meaning they are paid before other kinds of priority debts, like taxes.

The contents of a Chapter 13 plan are governed by 11 U.S.C. §1322. According to 11 U.S.C. §1322(a)(2), the plan shall provide for the full payment, in deferred cash payments, of all claims entitled to priority under 11 U.S.C.S. §507 of the title, unless the holder of a particular claim agrees to a different treatment of such claim. 11 U.S.C.S. § 507(a)(1) gives first priority to the payment of the administrative expenses of the bankruptcy trustee and to domestic support obligations.  Domestic support obligations are further designated as those owed directly to the custodial parent, 11 U.S.C. §507(a)(1)(A), and those assigned or owed directly to or recoverable by a governmental unit under non-bankruptcy law. 11 U.S.C.S. § 507(a)(1)

A Chapter 13 Plan, even if confirmed by the bankruptcy court, is subject to dismissal if the debtor fails to pay any post-petition or post-confirmation domestic support obligations, and a Chapter 13 discharge will not be entered by the bankruptcy court unless and until a debtor certifies that all domestic support obligations have been paid and that the debtor is current on such obligations.  If the debtor is not current, no plan should be confirmed and the case should be dismissed or converted to Ch. 7.    11 U.S.C.§§ 1112(b)(4)(P), 1129(a)(14), 1208(c)(10), 1225(a)(7), 1307(c)(11), and 1325(a)(8).

Domestic support creditors are given highest priority under § 507(a)(1).    Prior to BAPCPA, domestic support orders were given a seventh place priority under 11 U.S.C. 507(a)(7). After BAPCPA, the priority for domestic support orders were elevated to 11 U.S.C. 507(1).

Post-BAPCPA, many cases have arisen where debtors have attempted to discharge debts that arose in relation to marital settlement agreements.  The decisions turn on a multitude of factors that the bankruptcy court must consider.  The Eleventh Circuit Court of Appeals in *Cummings v. Cummings* held:

> Whether a given debt is in the nature of support is an issue of federal law. Although federal law controls, state law does provide guidance in determining whether the obligation should be considered 'support' under § 523(a)(5). To make this determination a bankruptcy court should undertake a simple inquiry as to whether the obligation can legitimately be characterized as support, that is, whether it is in the nature of support.
> In conducting this inquiry, a court cannot rely solely on the label used by the parties.  As other courts have recognized, it is likely that neither the parties nor the divorce court contemplated the effect of a subsequent bankruptcy when the obligation arose. The court must therefore look beyond the label to examine whether the debt actually is in the nature of support or alimony. A debt is in the nature of support or alimony if at the time of its creation the parties intended the obligation to function as support or alimony. Thus, the party seeking to hold the debt nondischargeble has the burden of proving by a preponderance of the evidence that the parties intended the obligation as support.

DIEPPA LAW FIRM, P.A., ATTORNEYS AT LAW
2097 WEST 76TH STREET, HIALEAH, FLORIDA 33016 · TELEPHONE (305) 826-8266

*Cummings v. Cummings*, 244 F.3d 1263, 1265 (11th Cir. 2001) (internal quotations omitted).

More recently, the Eleventh Circuit Court of Appeals held in *In re Benson* that mortgage payments that a former husband was required to make on his former wife's residence pursuant to a "property settlement agreement" constituted a DSO. *Benson v. Benson* (*In re Benson)*, 441 Fed. Appx. 650, 2011 WL 4435560 (11th Cir. 2011). In holding that courts should look beyond the label given to a particular debt by the parties, the *Benson* court provided several factors that should be used to analyze the nature of such debt as follows:

> (1) the agreement's language; (2) the parties' financial positions when the agreement was made; (3) the amount of the division; (4) whether the obligation ends upon death or remarriage of the beneficiary; (5) the frequency and number of payments; (6) whether the agreement waives other support rights; (7) whether the obligation can be modified or enforced in state court; and finally (8) how the obligation is treated for tax purposes.

> Id. (citing *In re McCollum*, 415 B.R. 625, 631 (Bankr. M.D. Ga. 2009)).

The U.S. Bankruptcy Court in the Middle District of Florida overruled a debtor's objections against his ex-spouse's claim for child support as a priority allowed claim for domestic support obligation. *In re: R. Don Throgmartin*, 462 B.R. 836; 2012 Bankr. LEXIS 345; 23 Fla. L. Weekly Fed. B 232. In that case, the debtor and his ex-spouse had entered into a settlement agreement requiring him to pay $31,000 monthly to the former spouse. The former spouse filed a claim for $302,000 in past due payments under the Agreement and debtor objected to the claim. The former spouse also asserted a claim for $31,000 monthly that was also accruing post-petition. The Court found that the debtor's obligation was in the nature of support and allowed the ex-spouse's priority claim.

Other courts have stated factors such as: (1) the respective employment histories and prospects for financial support, (2) the fact that one party or another receives the marital

property, (3) the periodic nature of the payments, (4) whether it would be difficult for the former spouse and children to subsist without the payments, (5) the length of the marriage, (6) the economic disparity of the parties, (7) whether there are minor children in the care of the complaining spouse, (8) age, employability, and education levels of the parties, (9) the label in the decree or agreement, and (10) whether the payment is contingent upon events such as death or remarriage. *In re Gianakas*, 917 F.2d 759, 762 & n.1 (3rd Cir. 1990); *In re Tatge*, 212 B.R. 604, 608 (B.A.P. 8th Cir. 1997).

In the Fourth Circuit, courts first look at the mutual or shared intent of the parties to create a support obligation. *Long v. Calhoun* (*In re Calhoun*), 715 F.2d 1103, 1109-10 (6th Cir. 1983) (showing that the initial inquiry is to determine whether there was intent to create support). Courts in the Fourth Circuit have articulated an "unofficial" test for the intent inquiry, which provides for the court to look at: (1) the actual substance and language of the agreement, (2) the financial situation of the parties at the time of the agreement, (3) the function served by the obligation at the time of the agreement (i.e. daily necessities), and (4) whether there is any evidence of overbearing at the time of the agreement that should cause the court to question the intent of a spouse. *Catron*, 164 B.R. at 919 (citing *Kettner v. Kettner*, No. 91-587-N, 1991 U.S. Dist. LEXIS 21130, 1991 WL 549386 (E.D. Va. Nov. 19, 1991)) (the Fourth Circuit noted that approval of the use of these factors did not preclude the use of other formulae).

In *In re Johnson*, the Court found that at the time the Debtor husband signed a separation agreement, he intended that payment of the joint debt serve as a contribution towards maintenance and support for his ex-wife. *In re Johnson*, 397 B.R. 289, 296 (Bankr. M.D.N.C. 2008). Before debtor and his ex-wife were divorced, they entered into a separation agreement wherein the debtor conveyed his interest in marital home to his ex-wife and that he would make

DIEPPA LAW FIRM, P.A., ATTORNEYS AT LAW
2097 WEST 76TH STREET, HIALEAH, FLORIDA 33016 · TELEPHONE (305) 826-8266

payments on the mortgage. The husband filed a petition for relief under Chapter 13 but provided for no payments on the aforementioned debt. The court sustained the ex-wife's objection to the plan because debtor's obligation to pay the debt was a "domestic support obligation," as that term was defined by 11 U.S.C.S. § 101(14A), and it was nondischargeable under 11 U.S.C.S. § 523(a)(5).

In a 2012 case set in the U.S. Bankruptcy Court for the Middle District of Georgia, the court there found that a property settlement very similar to the one at issue in the present case was in the nature of support.  *Pylant v. Pylant (In re Pylant)* 467 B.R. 246, 251 (Bankr. M.D. Ga. Mar. 14, 2012). In *Pylant*, the court cited factors such as the spouse giving up the right to modify alimony and the relative greater financial position of debtor than the spouse at the time of divorce.  Based on those facts, the funds owed to the spouse were to fund a replacement home to maintain her standard of living that she was accustomed to at the time of the divorce.

Similarly, in the instant case, the ex-spouse Camile Caputo agreed to the property settlement and co-signed a new loan with the proceeds going to the Debtor in return for a payment of $210,000 to be paid to her.  This $200,000 settlement and additional $10,000 payment would enable Camile to buy a new home, as she was giving up title to the marital home, and would allow her to maintain a standard of living that she was accustomed to.

As stated in the facts above, Debtor had income, while Camile Caputo had none.  The clear disparity in their financial position, negotiating and business acumen, and the benefits arising from the settlement, clearly favor that the agreement was in nature of support.  Rather than selling the marital home, Debtor kept the marital home, agreed to pay her $210,000 and made her co-sign an equity line, which Camile is still legally and financially responsible to pay. Debtor never paid the $200,000 support provided for in the Marital Settlement Agreement.

DIEPPA LAW FIRM, P.A., ATTORNEYS AT LAW
2097 WEST 76TH STREET, HIALEAH, FLORIDA 33016 · TELEPHONE (305) 826-8266

Debtor has never paid the equity line he made Camile Caputo co-sign.  Caputo is legally responsible for this debt.

Pursuant to the holdings in *In re Benson*, *In re Pylant*, and *In re: R. Don Throgmartin*, the Court should find that the debt owed by Debtor to Camile Caputo is a domestic support obligation based on the facts and circumstances surrounding the marital settlement agreement they signed. Accordingly, Caputo's claim is a priority claim and should be in full over the sixty month chapter 13 plan.  Simply put, Camile Caputo is a priority creditor that must be paid in full pursuant to 11 U.S.C.S. § 1326(b)(1) for the full unpaid balance of $210,000 owed to her by Debtor and that debt should be paid <u>concurrently</u> with all other secured creditors pursuant to the marital settlement agreement during the Ch. 13 plan.

<h2 style="text-align:center;"><u>CONCLUSION</u></h2>

Camile Caputo asks the Court to find that she is a priority creditor entitled to be paid in full through the plan payments Debtor's Ch. 13 plan.

**DIEPPA LAW FIRM, P.A.**
2097 West 76 Street
Hialeah, FL 33130
Tel: 305-826-8266
Fax: 786-513-0687
Email: edieppa@dieppalaw.com

By:__/s/ Eduardo E. Dieppa III, Esq.
    **EDUARDO E. DIEPPA III**
    Florida Bar No. 832901

Case No. 12-23166-AJC

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States Bankruptcy Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

I hereby certify that on this 24th day of Feb., 2013, a copy of the foregoing was served upon all parties in the attached service list via CM/ECF and/or by U.S. Mail.

**VIA CM/ECF**
Nancy N Neidich, Esq.
Standing Ch. 13 Trustee
P.O. Box 279806
Miramar, FL 33027

U.S. Trustee
Office of the US Trustee
51 S.W. 1st Ave., Suite 1204
Miami, FL 33130

Michael Frank, Esq.

**VIA US MAIL**
All other parties listed in the Master Mailing Index.

By:__/s/ Eduardo E. Dieppa III, Esq._
**EDUARDO E. DIEPPA III**
Florida Bar No. 832901

DIEPPA LAW FIRM, P.A., ATTORNEYS AT LAW
2097 WEST 76TH STREET, HIALEAH, FLORIDA 33016 · TELEPHONE (305) 826-8266