**THIS AGREEMENT** made and entered into this 13 day of June by and

between Camille Caputo, with an address at                    ereinafter referred to as

"Wife," and Paul Caputo, with an address at                    ereinafter referred to 2007

"Husband".

## WITNESSETH:

**WHEREAS** the parties were married to each other on

Lauderdale, Florida; and

**WHEREAS** the parties separated in Miami, Florida; and

**WHEREAS** there is one child born of this marriage to- wit:

**WHEREAS** certain disputes have arisen between Husband and Wife which both

parties acknowledge have caused irreconcilable differences and in consequence of

which the parties agree to separate and to live apart; and

**WHEREAS** the parties mutually desire to settle any and all of their respective

property, marital and alimony rights to the end that no difficulties may arise hereafter

with respect to such matters in a manner; and

**WHEREAS** each of the parties has received independent legal advice as to the

nature and obligations of this Agreement and each has been fully informed of his or her

respective rights, obligations and liabilities; and

**WHEREAS** the parties have entered into this Agreement freely and voluntarily

after full and frank disclosure each to the other made; and

*Cc*

WHEREAS, each of the parties believing this Agreement to be fair, just and reasonable, has assented freely and voluntarily to its terms.

NOW THEREFORE, in consideration of the mutual covenants and conditions contained in this Agreement, and in consideration of the obligations accepted by the parties, as well as other good and valuable consideration provided for in this Agreement, incorporating the foregoing recitals, and intending to be legally bound, Husband and Wife agree as follows:

### I.    SEPARATION:

The parties have agreed and have the absolute right to live separate and apart from each other during the remainder of their natural lives in all respects as if their marriage had never existed, and neither party shall have any right to control any of the personal actions, conduct, or activities of the other party, nor to interfere with the manner of living of the other as fully and to the same extent as if he or she was single and unmarried.  Both parties recognize that both or either party may carry on other personal relationships with other individuals and shall be free from harassment or persecution by either party during any proceedings after or during the course and effect of this Agreement.

### II.    CONTRACTING DEBTS:

Each of the parties hereto represents that he or she has not contracted or will not hereafter contract any debt, charge or liability in the name or upon the credit of the other, or for which the other party or the estate of the other might or could become liable and aggrieved, and in any event to indemnify and hold the other and the estate of the

other harmless therefrom in all respects unless otherwise specifically provided for within the confines of this Agreement.

### III.   MUTUAL RELEASE:

Except as otherwise expressly provided in this Agreement, the parties agree to release and do hereby release any and all claims they may have to and upon the property of the other and their estates, whether real or personal and whether now or hereafter acquired to the end that each shall have the free and restricted right to dispose of his or her individual property from any claim or demand by the other party and so that his or her estate shall be and belong to the person or persons who have become entitled by will or devise, bequest, intestacy, administration, or otherwise, if one of the parties dies during the lifetime of the other party and without limiting the foregoing, each party expressly waives, surrenders and relinquishes any and all right of election to take any share of the estate of the other party as an intestacy, including, but not limited to, any and all dower, courtesy, elective share, or other present or future rights and interests in any real or personal property of which either party may die seized or possessed, and each party further surrenders and denounces any right of administration to the estate of the other party or to serve as executor or personal representative.

### IV.   ADDITIONAL INSTRUMENTS:

The parties shall execute, upon the request of the other, such bills of sale, deeds, releases, waivers, and other instruments, papers, or documents as either party may reasonably require for the purpose of giving full effect and compliance with all of the provisions of this agreement, affecting any real or personal property of the parties as set

forth herein. In the event that either party shall fail or refuse to execute any such

instrument, paper, or document, then it is the understanding of the parties that an order of any court of competent jurisdiction shall, and will operate as, and instead of said instrument, paper or document for the conveyance of said real or personal property set forth herein.

## V.    MODIFICATION AND WAIVER:

No modification and waiver of any of the terms of this agreement shall be valid unless set forth in writing and unless said subsequent instrument is executed with the same formality as this agreement. The failure of either party to insist upon the strict performance of any of the provisions of this agreement shall not be deemed a waiver of the right of the party thereafter to insist upon the performance of that, or any other provision of this Agreement, at any time whatsoever.

## VI.    ENTIRE UNDERSTANDING:

The parties have incorporated in this agreement their entire understanding of all matters relating to all issues contained herein, and each of the party's makes the following representations and warranties to the other: No oral statement or prior written matter extrinsic to the agreement concerning the rights, duties, or obligations of either party hereto, or to the other, or oral representation of either party's respective attorney, shall have any force or effect on any party. The parties are, and have not relied upon, and specifically herein repudiate, any past, present, or future representations other than those expressly set forth herein. Any prior agreements, statements, promises, or representations between the parties, whether written or oral, are hereby revoked and held void and unenforceable. Neither has been subjected to any form of coercion,

intimidation, or any acts or threats of violence or undue influence which in and of itself
Case 12-23166-AJC   Doc 93-1   Filed 02/24/13   Page 5 of 24
would give further rise to the total and complete invalidation of same.

## VII.   GOVERNING LAW AND PARTIAL INVALIDITY:

This Marital Settlement Agreement shall be strictly construed and governed according with the laws of the State of Florida, and if any provisions of this Marital Settlement Agreement is held to be invalid, void, voidable or, for some other reason unenforceable, then, in that event all of the other remaining provisions of this agreement shall nevertheless continue to be binding and in full force and effect on the parties hereto.

## VIII.   INDIVIDUAL COUNSEL AND FINANCIAL DISCLOSURE:

The parties make the following representations and warranties with respect to their individual counsel and financial disclosure: Each party has had, or has been advised to seek, independent counsel and legal advice of his or her own selection in negotiation and in the preparation and execution of this Marital Settlement Agreement. Each party fully understands all of the facts and has been, or is entitled to be fully advised and informed as to his and/or her legal rights and obligations under the terms hereof. Each party fully understands the facts and has been fully informed as to his or her legal rights and obligations, and each is signing this Agreement freely and voluntarily, intending to be bound by it and each intends to so bind their heirs and assigns. As a result of each party executing this Agreement freely and voluntarily, each party thereby, fully intends to be bound by all of the terms and conditions contained herein.

Each of the parties to this agreement stipulates and acknowledges that each has been supplied with full financial disclosure from the other party. Each party has sufficient knowledge of the others financial status in order to properly evaluate and consider the entry into this Agreement. The parties are entering into this Agreement upon reliance of the materially accurate information and truthful disclosure between the parties. Both parties have had the opportunity to exchange additional further documentation, but waived such additional exchange as a result of each having a comprehensive and sufficient knowledge of the other's financial status.

IX.     REPRESENTATION:

A.     Each party has acknowledged that they have had the right to independent legal counsel. Each party has sought the advice of independent legal council prior to executing this agreement.

B.     Tax Advice.

The parties hereby acknowledge and agree that each has had the opportunity to retain his or her own accountants, certified public accountants, tax advisor or tax attorney with reference to the tax implications of this Agreement. Further, both parties hereby acknowledge that neither has relied upon tax advice that may or may not have been given by their respective attorneys, if applicable, who have represented them in negotiating this Agreement and their dissolution of marriage proceedings. Further, both parties hereby acknowledge that each has been advised by their respective attorney, if applicable, to seek his or her own independent tax advice by retaining an accountant,

Page 6 of 23

implication involved in this Agreement. Further, the parties acknowledge and agree that their signature to this Agreement serves as their acknowledgment that they have read this particular paragraph and have had the opportunity to seek independent tax advice, and have not relied upon their respective attorneys for specific tax advice with respect to the tax ramifications of this Marital Settlement Agreement.

## X.    VOLUNTARY EXECUTION:

The parties to this Marital Settlement Agreement fully warrant, represent and declare that they have read, in detail, and have understood the provisions set forth in this Marital Settlement Agreement and that they have done so after retaining legal counsel or having the opportunity to have independent counsel and legal advice of his or her own selection. Each party has had an opportunity to exercise all discovery options with regards to each other's financial affairs likely to influence his or judgment thereon. The parties further represent that after having read and understood all of the terms, conditions, and obligations set forth in this Marital Settlement Agreement, that they firmly, and truly believe this Marital Settlement Agreement to be fair, just and reasonable and each has signed, executed and entered into this Agreement freely and voluntarily, without any undue influence, fraud, coercion, threats, intimidation or any misrepresentations by either party or their own respective counsel.

## XI.    NON-INTERFERENCE:

Each party agrees that he or she shall not interfere with, harass, annoy, or molest the other at work, at home, or in any other location where either party knows the other to be, in any way by and through his or her own act, or by and through others

acting for and on behalf of either party. Neither party shall in any way defame or disparage the other's character or make any disparaging remarks about the other party or allow others acting for and on behalf of either party to do so. That includes any remarks referring to the character, integrity, professionalism or morality of either party.

### XII.   COUNTERPART SIGNATURE:

This Marital Settlement Agreement may be signed in one or more counterparts, each of which, when executed with the same formality and in the same manner as the original, shall constitute an original.

### XIII.   CHILD SUPPORT AND RELATED ISSUES:

A.   The parties agree that the Husband shall pay as reasonable child support the sum of $1,000.00 per month upon the entry of a dissolution of the parties marriage. The parties agree that these sums are in compliance with the statutory guidelines in reference to this amount based upon factors including the child support statutory guidelines, the time being spent by each respective parent with the minor children, the standard of living of the children and the needs and abilities of both parties.  These child support payments shall not be paid to the clerk of the court, but shall be paid to the respective party directly, and both parties waive payment through the Court's Central Depository

B.   The minor children's medical and health care needs shall continue to be met by the private health insurance policy now in existence. All premiums shall be maintained by the husband. All uncovered, reasonable and necessary medical, dental and other health care expenses shall be .paid by husband to the best of his ability.

The Husband shall take the minor child as their tax dependency deduction, childcare credit and any other tax benefits, as long as each party can benefit from same. All forms necessary to effectuate this provision shall be immediately signed upon presentation.

D.      The Husband agrees to maintain a minimum life insurance policy of $500 thousand with the minor child designated as the irrevocable beneficiary of Said policy and shall remain in full force and effect as long as the child support obligation and the college education responsibility is in effect.  The Wife may request evidence of said policy being in full force and effect and the Husband shall provide said information and documentation immediately thereafter.  In no event shall the owner of said life insurance policy create or incur any liens or other obligations that would diminish the value of said policy, including but not limited to, the face, cash or surrender value.

In addition, contemporaneously with the execution of this agreement, the Husband shall execute a letter of direction and authorization to the life insurance company specifically restricting any use of said policy or changes therein, related to both the face value and the cash value.  Said letter shall copy the Wife and authorize her and the insurance company to have full communication with each other.

E.      The Husband, to the best of his ability, agrees to be fully responsible for all the school tuition needs of the child through college.  The only expense that the parties shall share equally in reference to the children's college education is her living expenses(ie) food,clothing, spending money. All living expenses shall be reasonable and necessary.  Upon presentation of a request for contribution by one parent to the other, the responding parent shall have 15 days within which to make said payment or

Page 9 of 23

object to same. In either event, so as not to prejudice the child, said payment shall be made and the parties shall immediately attempt to reconcile their differences on said payment or in the alternative submit the necessity and reasonableness of said payment to the arbitrator as provided under the arbitration provision herein. The Husband shall be fully responsible for the college education of the minor child. It is the joint hope of both parents that their children attend the finest school compatible with their abilities and intelligence.

.    F.    The Husband shall be responsible for a reasonable vehicle (4yrs old or 60k miles or less) for the child, upon her reaching the minimum legal driving age through their college education per paragraph "E" above. The Husband shall be fully responsible for providing said vehicle, including full insurance coverage.

G.    The regular child support obligation as listed under paragraph A above shall terminate upon both of the minor child becoming emancipated by reaching the age of 18 or graduating from high school but no later than age 19.

H.    The parties shall share equally the costs for the children's summer camp and summer school as well as any and all travel associated with said summer activities, if they attend. Husband will be responsible for the first $1,000.

### XIV.    ALIMONY:

A.    Each party specifically and unequivocally waives any and all entitlement to any other form of alimony, be it permanent, periodic, rehabilitative, or lump sum. Each party fully understands and has been advised by their respective counsel, that he or she may be entitled to some form of periodic alimony, either rehabilitative or permanent. Such form of alimony could be due now or in the future, but each specifically and unequivocally

Page 10 of 23

social development of the children. The parties will exert the best efforts to work cooperatively in future plans consistent with the best interests of their child and in amicably resolving such disputes as may arise.

C. Both parties shall be entitled to participate with and attend special activities in which the child is engaged, such as religious activities, school programs, sport events, and other extracurricular activities, and important social events in which the child participate.

D. Neither party shall take, or allow the child to be taken permanently outside the State of Florida without the express written consent of the other party or upon further order of the court under penalty pursuant to, not only Florida Statutes, but Federal Statutes relating to kidnapping. Both parties agree not to remove the child outside of Dade County Florida for any period in excess of two (2) weeks without written consent. Neither party shall permanently move outside of Dade or Broward County without consent of the other party or the court.

E. Both parties shall exercise, in the utmost of good faith, his and her best effort at all times to encourage and foster the maximum relations of love and affection between the minor child and their mother and father. Neither party shall in any way impede, obstruct nor interfere with the exercise, by the other, of his or her right of companionship with the minor child, and neither of them at any time shall in any manner disparage nor criticize the other parent, nor allow any other to do so, to, or in the presence of the minor child. To the contrary, each party shall encourage their child to love and respect the other party.



with shall have open and reasonable right of daily telephonic communication with the children at all reasonable times and must provide a home number for access.

G. Each party agrees, that if either party has any knowledge of any illness or learns of any accident or other circumstance seriously affecting the child's health and welfare, the Father or Mother, as the case may be, will promptly notify the other party of such circumstance and the party whom is being notified shall have the right to immediate access to the minor child notwithstanding where the child may be. Wherever the child is, each of the parties shall be informed of where they shall have telephonic communication with the child and shall have the right to have said communication.

H. The parties understand the need for continuity, predictability, and stability in the life of the child. In order to achieve this, the parent with whom the child is actually with shall have the routine daily responsibility to make those decisions that are necessary in the natural course of caring for the child.

## XVI.   TIME SHARING WITH THE CHILD:

A.   The parties have the ability to work out all time-sharing with the minor child and feel that no specificity is needed.   Notwithstanding the above, father will have the child on his birthday, father's day.  The mother will have the child on the mother's birthday and mother's day. Holiday's will be spent with each parent alternately, with odd year Thanksgiving to the mother, and same year Christmas(first week) going to the father. Mother would get the 2nd week of Christmas vacation. Summers will be spent with each parent for half of the time. Spring vacation will be also alternating with mother getting odd years.

## XVII.   EQUITABLE DISTRIBUTION

A.     The former marital residence is located ir                     lorida and is      titled solely in the name of the husband.

  B.     The parties have elected to further equitably divide their assets by the following payments by husband to wife:

  1. The total sum of $200,000 paid to the wife upon closing of the house or before.  Such financial obligation shall be paid in the following manner until the final sale and closing of the subject house, where, at such time the remaining balance will be paid from the proceeds from the closing of the subject house.  Upon the execution of this Agreement, husband will pay to wife the sum of $10,000.00.  Wife may request an additional $10,000.00 from the husband to be paid by the husband within 48 hours of said request.  This $20,000.00 will be credited against the husband's above obligation.  One hundred twenty (120) days from the execution of this Agreement, husband will pay to wife the sum of $20,000.00, to be credited against the husband's above obligation.  Two hundred and forty (240) days from the execution of this Agreement, husband will pay to wife the sum of $20,000.00, to be credited against the husband's above obligation. Three hundred and sixty five (365) days from the execution of this Agreement, husband will pay to wife the sum of $50,000.00, to be credited against the husband's above obligation.      If  after  this

Page 14 of 23

year payment is made, and the subject house is still not sold, the wife will receive from husband and additional $20,000.00 added to his original $200,000.00 obligation, less all above payments. Eighteen (18) months from the execution of this Agreement, husband will pay to wife the final sum due and owing under this Agreement. The husband will continue paying for wife's car insurance, health insurance($300/mo), cell phone($100/mo) for an additional two years from the time of the execution of this document. Husband will also be responsible for wife's moving expenses within Miami from the home located at 550 Ne 56th St. Wife is to maintain a clean driving record for insurance to continue. Any moving violations (unless she is not at fault), DUI or accidents will terminate coverage. Husband will maintain payments her Mercedes until paid off or a substitute car is provided up to $20,000, including regular maintainence.

C. The Wife specifically waives any and all right, title and interest to the Husband's businesses, including but not limited to

whether present, past and future and further waives any and all rights reference to any of the husbands monies, whether his own or through his family. The Wife specifically understands and acknowledges that she would have a right to 50% of said businesses. Despite that right, the Wife waives any and all right, title and interest to participate in said businesses realizing that said waiver is permanent, irrevocable and non-modifiable.

Page 15 of 23

D. Husband and Wife currently own 50% of Kidscape, with the Wife owning 30% and husband owning 20%. This structure will be modified, in that the husband will transfer to the wife his ownership interest of 20% within ten (10) days of any final order of dissolution is entered by a court of competent jurisdiction with respect to the parties marriage. If the business is sold, the first $20,000 will go to Husband to pay outstanding debt on the business in the husbands name. The creditors are                    nd

[ _____ ___.    Each are owed $10,000.

E.    The Husband specifically waives any and all rights to any properties, interests that the Wife may have in reference to her family.

F.    The Wife shall keep all jewelry and personal property in her name.

## XVIII. INCOME TAX LIABILITY

A.    Warranties and Representations.    The parties have filed joint tax returns during their marriage.    The parties warrant and represent to each other that they have duly paid all income taxes on all joint returns previously filed by the parties.    Each party shall indemnify and hold the other harmless with respect to all matters related to any and all federal income tax liability, including but not limited to all tax levies, assessments, fines, expenses, attorney's fees and costs as a result of his or her income or disallowance of his or her deductions pertaining to any prior joint tax returns filed by the parties.

B.    Contest of Deficiency.    In the event that the party at fault wishes to contest a deficiency assessment in the United States Tax Court, it shall be the responsibility of

the parties to timely file the necessary petition(s) on behalf of both parties and the parties shall jointly pay any expenses, including attorneys' fees occasioned thereby. The parties shall execute and deliver whatever documents are reasonably required to authorize the filing of such petition(s). If the other party shall fail to execute and deliver whatever documents are reasonably required, upon reasonable request, this provision shall constitute that party's authorization and power of attorney for such purpose.

C.      The parties agree to file a joint tax return for the taxable year 2006. The parties will equally divide any tax refund for the year 2006, if any. The Husband will notify the Wife as soon as the income tax refund is received. The parties do not foresee any monies due IRS.

### XIV. BANK ACCOUNTS:

All joint bank accounts will be closed on _____ and any balances remaining will be split between the parties.

### XX. TANGIBLE/INTANGIBLE PERSONAL PROPERTY:

Except as specifically provided in this Agreement, neither party shall make any claim to any items of tangible or intangible personal property which is now in the possession or control of the other. The Husband acknowledges that he is holding certain specific property of the Wife until she has relocated and can move said property to her new location.

### XXI. DEBTS:

A.      Each Spouse to Assume Own Debt. All debts presently titled in the name of or incurred by the Husband shall be his sole obligation, including credit

Page 17 of 23

card debts. The Husband shall indemnify and hold the Wife harmless from said liabilities. All debts presently titled in the name of or incurred by the Wife shall be her sole obligation, including credit card debts, except as specifically stated in paragraph 1 above. The Wife shall indemnify and hold the Husband harmless from said liabilities.

Husband acknowledges that wife is on first mortgage(world savings) and possible the 2nd mortgage (Wachovia) and that the total combined does not exceed $470,000. Husband agrees to the indemnify wife from any and all debt obligations against the house and, to the best of his ability, will refinance the house to a new loan excluding the wife from and and all debt against the house or any debt related to the house.

Except as specifically provided to the contrary in this Agreement, any debts and obligations not determined above should be the sole responsibility of the individual who incurred the debt, including credit card debts. Subsequent to the date of execution of this Agreement, neither party shall hereafter incur any indebtedness for which the other may be liable, and each of the parties agrees to forever indemnify and protect, save and hold harmless, the other from any liability in regard to the respective obligations and responsibilities provided for in this Agreement. In the event that it is necessary for either party to enforce this indemnification, the prevailing party shall be entitled to all costs and reasonable attorneys' fees incurred in connection therewith.

XXII. CREDIT:

A. Joint Charge Accounts Terminated: Joint charge accounts or joint lines of credit shall be forthwith terminated by the parties hereto. Each party shall do all that is

necessary to conform and notify all past, present debtors and creditors of said accounts of such cancellation of joint liability.

  B. <u>Prohibition to Pledge Credit</u>: Except as specifically provided to the contrary in this Agreement, neither party will incur any liability, expense or charges in the future, either through the use of the credit of the other or the name of the other, nor shall one party represent to third persons that they are acting as agent of the other, and each party agrees in support hereof, to forever indemnify and protect, save and hold harmless, the other from any such liability, obligation or expense, including, but not limited to, reasonable attorney's fees and costs.

### XXIII. ATTORNEY'S FEES AND COSTS:

Husband agrees to pay half of wife's attorney's fees up to $1,000.

### XXIV. EFFECT OF RECONCILIATION:

  This Agreement will remain in full force and effect even if the parties affect a reconciliation, cohabit as Husband and Wife or attempt to reconcile.

### XXV. DEFAULT:

  In the event either party to this Agreement defaults in his or her obligations here under, the party in default shall be liable to the non-defaulting party for all reasonable expenses incurred, including attorney's fees and costs, in the enforcement of obligations or indemnifications created by this Agreement.

### XXVI. DISSOLUTION ACTION:

  In any action instituted in any Court by either of the parties, for the dissolution of their marriage, it is the desire of both parties hereto that this Agreement and the provisions hereof, be ratified and confirmed by the Court in any decree that may be

entered therein and the parties, each of them or either of them, will present this Agreement to the Court and request that it be ratified, confirmed and approved and made an enforceable part of any decree or order entered. Neither of the parties hereto will in any way oppose ratification, confirmation, and enforcement of this Agreement and the provisions hereof by the Court in any such proceeding. In any event, this Agreement shall not be merged and shall survive any such decree or order. While the Agreement shall be incorporated into the final judgment, it is specifically agreed that this Agreement shall be forever binding and conclusive on the parties and shall not be merged into any final judgment, and shall be an independent contract, the terms of which constitute an enforceable legal obligation, which, in and of itself may be sued upon in an independent fashion. In order that there may be no misunderstanding, this Agreement shall survive and shall not be merged into any decree, judgment, support order or other order to enforce such decrees, judgment, or support order.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals

this __13__ day of __June__, 2007.


WITNESSETH:

_____          _____
              Witness                                 Camille Caputo

_____          _____
              Witness                                 Paul Caputo

STATE OF FLORIDA)
                 ) ss:
COUNTY OF MIAMI-DADE)

*Camille Caputo*
CAMILLE CAPUTO

    BEFORE ME, the undersigned authority, duly authorized in the State and County

aforesaid to take acknowledgments, personally appeared CAMILLE CAPUTO who after

being duly sworn, states that she has read the Marital Settlement Agreement and to the

best of her knowledge and belief the information contained therein is true and correct,

and that she has signed said Agreement for the purposes therein expressed. I relied

upon the following form (s) of identification of the above-named person: (Driver's Lic. # *Personally*

*Known* ) and that an oath was not taken.

    WITNESS my hand and official seal in the County and State last aforesaid this

day of __June 13__, 2007.



NOTARY PUBLIC
STATE OF FLORIDA

MY COMMISSION EXPIRES:

Neys H. Henderson
Commission #DD480477
Expires: OCT. 11, 2009
www.Aaron NOTARY.com

Page 22 of 23

STATE OF FLORIDA)
        ) ss:
COUNTY OF MIAMI-DADE)

_____
PAUL CAPUTO

    BEFORE ME, the undersigned authority, duly authorized in the State and County

aforesaid to take acknowledgments, personally appeared PAUL CAPUTO who after

**being duly sworn, states that he has read the Marital Settlement Agreement** and to the

best of his knowledge and belief the information contained therein is true and correct,

and that he has signed said Agreement for the purposes therein expressed.  I relied

upon the following form (s) of identification of the above-named person: (Driver's Lic. # _Personally Known_

) and that an oath was not taken.

    WITNESS my hand and official seal in the County and State last aforesaid this

day of ___June 13___ , 2007.



NOTARY PUBLIC
STATE OF FLORIDA

MY COMMISSION EXPIRES:

Neys H. Henderson
Commission #DD480477
Expires: OCT. 11, 2009
. . . ' ' '     . . TARY.com

Page 23 of 23

IN THE CIRCUIT COURT OF THE 11TH

IN RE: THE MARRIAGE OF
PAUL CAPUTO
        Petitioner,

vs.

CAMILLE CAPUTO
        Respondent.

_____/

JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA
CASE NO.:   05-26303-FC-29
Florida Bar No.:817570

Position # 36

NOV 15 2007

## FINAL JUDGMENT OF DISSOLUTION

THIS CAUSE came on to be heard before the undersigned Circuit

Court Judge on November 14, 2007 upon the Petition for Dissolution of

Marriage.  The Court having reviewed the pleadings, proof of the

Residency, and being fully advised in the premises, it is thereupon

    ORDERED AND ADJUDGED as follows:

1  That this Court has jurisdiction over the parties and subject
   matter to this cause.

2  That the marriage of the parties is irretrievably broken.

3  That the bonds of marriage between the Petitioner, PAUL CAPUTO,
   and the Respondent, CAMILLE CAPUTO, are dissolved a vinculo
   matrimonii and the parties are restored to the status of being
   single and not married.

4. That one child was born of this marriage,
   (

5. That the parties entered into a Marital Settlement Agreement
   June 13, 2007, which resolved all issues related to, custody of
   the minor child, visitation with the minor child, child support
   pursuant to the statutory guideline with respect to the minor
   child, the division of the parties' real property, marital
   assets and debts and that the Marital Settlement Agreement is
   incorporated by reference into this Final Judgment.  That the
   Marital Settlement Agreement is in the best interest of the
   parties. Said Agreement is attached as Exhibit A to this Final
   Judgment of Dissolution.



6  That each side to be responsible for its own attorney fees and costs.

7  That this Court retains jurisdiction over the parties and subject matter of this action and retains jurisdiction to enforce or modify the terms of the parties' Marital Settlement Agreement.

DONE AND ORDERED in Miami, Dade County, Florida November 14, 2007.

_____
Circuit Court Judge
Marc Schumacher
Circuit Court Judge

Copies Furnished to:
Hyatt M. Fried, Esq.
Camille Caputo